UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE J. SMITH,

    Plaintiff,                                      Civil Action No. 11-13523
v.                                                HON. SEAN F. COX
                                                      U.S. District Judge
                                                      HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Shane J. Smith brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED.

**PROCEDURAL HISTORY**

On November 6, 2007, Plaintiff filed applications for DIB and SSI, alleging disability as of January 20, 2005 (Tr. 120-131). After the initial denial of the claims, Plaintiff filed a request for an administrative hearing, held in Chicago, Illinois before Administrative Law Judge ("ALJ") Ayrie Moore (Tr. 30). Plaintiff, represented by attorney Robert

Samoray, testified by teleconference from Detroit, Michigan (Tr. 34-61). Vocational Expert ("VE") James Radke also testified (Tr. 61-68). On May 27, 2010, ALJ Moore found Plaintiff not disabled (Tr. 24-25). On June 15, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on August 12, 2011.

## BACKGROUND FACTS

Plaintiff, born March 26, 1979, was 31 at the time of the administrative decision (Tr. 120). He completed high school and worked previously as a grocery bagger, car mover, molding operator, oil and tire changer, and pallet builder (Tr. 154, 159). His application for benefits alleges disability as a result of bipolar disorder, a learning disability, kidney stones, an inner ear condition, and right knee problems (Tr. 153).

### A.     Plaintiff's Testimony

Plaintiff testified that he currently lived in a single family home with his parents, wife, and three children (Tr. 35). He reported that he held a valid driver's license and drove regularly (Tr. 35). Plaintiff stated that his weight generally fluctuated between 360 and 380 pounds (Tr. 35).

Plaintiff reported that as a result of a learning disability, he was placed in special education classes (Tr. 36). He testified that he experienced difficulty reading (Tr. 36). He stated that he last worked for a "temp service," adding that he was terminated after taking a sick day (Tr. 37). He alleged disability as a result of bipolar disorder, inner ear fluid buildup, cartilage damage to his knees, kidney stones, and a right shoulder cyst (Tr. 38).

Plaintiff testified that he experienced intermittent shoulder pain (Tr. 40). He testified

that he received treatment for bipolar disorder once every two months for the past four years (Tr. 40). He reported that he sought treatment for ear problems on an "as needed basis" and received care for his knee and shoulder problems from a primary care physician (Tr. 41). He stated that he saw yet another physician for kidney problems, acknowledging that he had recently gone eight months without experiencing symptoms (Tr. 42-43). He admitted that he had not been hospitalized for kidney stones since 2007 (Tr. 44). He reported that he also underwent outpatient surgery for sleep apnea and a septoplasty in 2008 (Tr. 45-47). He characterized his knee pain as a seven on a scale of one to ten (Tr. 49).

Plaintiff stated that as a result of bipolar disorder, he was unable to accept criticism from supervisors, alleging that he would become "depressed about the job and not want to go in . . ." (Tr. 49). He opined that his failure to meet job expectations was "subconscious[]" (Tr. 49). He reported good results from taking Topamax and Cymbalta, but noted that he occasionally lost his temper despite the medication (Tr. 50). He reported the side effect of drowsiness (Tr. 51). He testified that he coped with the side effect by arising in the morning, taking his medication, then going back to bed to "sleep off the effects" so he would not experience drowsiness later in the day (Tr. 58). Plaintiff stated that although he put "110 percent" into his former work, his supervisors would typically "lash out" at him rather than his underachieving coworkers (tr. 52). He testified that before his recent bout of shoulder pain, he was able to lift up to 50 pounds, but was now experiencing difficulty lifting his 37-pound son with his right arm (Tr. 39, 53). He denied problems overhead reaching on the left side (Tr. 54). He estimated that he could sit without limitation, but was limited to standing

for half an hour and walking for one hour (Tr. 54). He denied limitations in gross or fine manipulations (Tr. 54-55). He alleged hearing problems only when ear tubes needed replacement (Tr. 55). He characterized his memory problems as "slight," but that he tended to lose focus when other people were talking (Tr. 56). Plaintiff admitted that he performed some household chores, grocery shopped, and cooked (Tr. 58). He testified that he spent his free time playing video games, watching cartoons, drawing, playing chess, visiting friends, and attending to his children's school events (Tr. 57, 59-61). He denied all drug use (Tr. 61).

**B.     Medical Evidence[1]**

### 1. Treating Sources

In August, 2004, Plaintiff underwent surgery for a deviated nasal septum, hypertrophic turbinates, and serous otitis media (Tr. 218). The procedure was performed without complications (Tr. 219). In September, 2005, Ashar Khan, M.D. performed an intake assessment of Plaintiff, noting a history of psychiatric problems (Tr. 309). Plaintiff reported the side effects of dizziness from Paxil (Tr. 502). Dr. Khan observed that Plaintiff was fully oriented with fair attention and concentration, assigning him a GAF of 55[2] (Tr.

---

[1] Treating records predating Plaintiff's January 20, 2005 onset of disability have been reviewed in full but are mostly omitted from the present discussion.

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

310). Dr. Khan's treating records show that Plaintiff was prescribed Cymbalta and Topomax on 12 occasions between October, 2005 and August, 2006 (Tr. 501). In October, 2005, Plaintiff complained of earaches (Tr. 315). January, 2006 imaging studies of the lumbar spine were unremarkable (Tr. 291). The same month, Plaintiff reported knee pain and earaches (Tr. 304). He was referred for ear surgery and imaging studies of the knee (Tr. 305). The following month, Plaintiff sought emergency treatment for suspected kidney stones (Tr. 278, 369). Plaintiff was admitted after imaging studies confirmed the presence of kidney stones (Tr. 273). On February 18, 2006, Ashwin Shah, M.D. performed a stent insertion (Tr. 267-268). Plaintiff was admitted for hospitalization the following month after imaging studies identified a kidney stone (Tr. 257).

A July, 2006 imaging study of the right knee was unremarkable (Tr. 243). In August, 2006, Plaintiff reported discomfort upon passing another kidney stone (Tr. 236-237). Dr. Khan's September, 2006 treating notes state that Plaintiff was "doing fine" on his current regimen (Tr. 495). In October, 2006, Dr. Khan noted that Plaintiff was eating and sleeping well and denied side effects from Topamax (Tr. 229, 292). Dr. Khan assigned Plaintiff a GAF of "60+"[3] (Tr. 230, 493). December, 2006 imaging studies show the presence of a small kidney stone (Tr. 227, 344). The same month, Plaintiff sought emergency treatment after passing a kidney stone (Tr. 477). He was discharged the following day in stable

---

[3] GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*), 32 (4th ed.2000).

condition (Tr. 472). Treating notes from April, 2007 state that Plaintiff was currently taking Topamax and Cymbalta (Tr. 487). Plaintiff underwent a successful cystoscopy in July, 2007 (Tr. 456, 460, 602, 644). He reported knee pain in April, 2008 but demonstrated a full range of joint motion (Tr. 594-595).

July, 2008 treating notes by Danilo Dona, M.D. noted a diagnosis of otitis media (Tr. 592). In September, 2008, treatment notes by H. George Levy, M.D. state that Plaintiff experienced fluid in his ears and right-sided hearing loss (Tr. 552). Dr. Levy noted that Plaintiff was relaxed and communicated well (Tr. 553). The same month, Plaintiff was diagnosed with severe sleep apnea (Tr. 570). The following month, he underwent a septoplasty without complications (Tr. 574). He reported mild nasal drip (Tr. 556). In November, 2008, Dr. Levy noted that Plaintiff's ear tubes were in place (Tr. 557).

In February, 2009, Dr. Khan observed that Plaintiff was cooperative with clear speech and a pleasant effect (Tr. 547). Plaintiff was fully oriented with a normal memory and fair insight (Tr. 547). In April, 2009, Plaintiff reported anxiety, but was cooperative and fully oriented (Tr. 550). In early May, 2009, Plaintiff passed another kidney stone (Tr. 692, 695, 711). Dr. Kahn's June, July, and October, 2009 findings are essentially identical to the previous February's observations (Tr. 548-549, 551). Dr. Khan issued letters in February and October, 2009 and in January, 2010 stating that he did "not recommend employment" for Plaintiff as a result of bipolar disorder (Tr. 542-544). In December, 2009, Plaintiff reported right shoulder pain (Tr. 586). In January, 2010, Plaintiff reported episodic ear aches (Tr. 563).

## 2. Consultive and Non-Examining Sources

In February, 2008, psychiatrist M. Bhausar, M.D. examined Plaintiff on behalf of the SSA (Tr. 505-509). Plaintiff denied psychoses, psychiatric hospitalizations, or substance abuse (Tr. 506). He reported that his relationships with family members were unremarkable (Tr. 506). He indicated that he enjoyed drawing as a hobby (Tr. 506). Dr. Bhausar noted that Plaintiff was cooperative with a normal gait and posture (Tr. 506-507). Dr. Bhausar assigned him a GAF of "65-70" with a fair prognosis (Tr. 508).

The same month, a consultive physical examination was performed by Cynthia Shelby-Lane, M.D (Tr. 510-519). Dr. Shelby-Lane noted that despite a history of hearing problems, Plaintiff could understand conversational speech (including whispered speech) and did not wear a hearing aid (Tr. 512-514). Plaintiff reported that while in school, he had been placed in special education classes as a result of a learning disability (Tr. 512). Dr. Shelby-Lane observed that Plaintiff did not use a cane for walking and demonstrated good reflexes (Tr. 513). He demonstrated a full range of motion in all joints (Tr. 517).

The following month, Kokila Sheth, M.D. performed a Psychiatric Review Technique of Plaintiff's treating and consultive records, finding the presence of an affective disorder (bipolar) (Tr. 524, 527). Under the "'B' Criteria," Dr. Sheth found mild limitations in activities of daily living and moderate deficiencies in social functioning and concentration, persistence, or pace (Tr. 534). She concluded that Plaintiff was capable of "simple, unskilled work" (Tr. 536). Dr. Sheth also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate difficulty understanding,

remembering, a carrying out detailed instructions; accepting instruction and criticism; and responding appropriately to workplace changes (Tr. 539). Dr. Sheth noted that Plaintiff's activities of daily living were not limited by psychological symptoms (Tr. 540).

### 3.  Material Submitted After the May 27, 2010 Administrative Opinion[4]

In April, 2010, Plaintiff sought emergency treatment for kidney pain (Tr. 731). He reported improvement of symptoms after receiving Lasix intravenously and Flomax (Tr. 735). He was discharged the following day in stable condition (Tr. 735).

### C.    Vocational Expert Testimony

VE Peters classified Plaintiff's past relevant work as a grocery bagger as unskilled at the light exertional level (as performed); pallet maker, semiskilled/light (as performed); machine operator, unskilled/light; lubrication and tire technician, semiskilled/medium; and driver, unskilled/light[5] (Tr. 64-65). The VE testified that if Plaintiff were limited to "simple,

---

[4] The Appeals Council order indicates that transcript pages 730-735 (Exhibit 23F) were submitted subsequent to the May 27, 2010 administrative decision (Tr. 4). Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds

unskilled, medium work and no overhead lifting [on the right]" he would be capable of performing all of his past unskilled work (Tr. 65). He testified further that if Plaintiff were limited to "simple light work" and restricted an environment that was not "noisy," and no overhead work with the right arm, he could perform his past relevant work as a grocery bagger, driver, and a reduced number of machine operator positions (Tr. 66-67). The VE stated that if the same individual was also limited to sedentary rather than medium work, he would be capable of other jobs[6] (Tr. 67). In response to questioning by Plaintiff's attorney, the VE stated that if the individual required unscheduled naps over the course of the workday, all gainful employment would be precluded (Tr. 68). The VE stated that in addition to his professional experience, his testimony was based on the information found in the *Dictionary of Occupational Titles* ("DOT") and *Occupational Employment Quarterly* (Tr. 63).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Moore found that Plaintiff experienced the

---

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[6] The transcript indicates that immediately after the VE testified that the individual could perform "other" work at the sedentary level, a one-minute, eight-second audio break occurred (Tr. 67). The VE's Step Five testimony is thus unavailable for review. However, because ALJ Moore's made a Step Four non-disability finding, the audio break does not prevent meaningful review of the administrative decision (Tr. 23-24).

"severe" impairments of "bipolar disorder; history of otitis media and Estachian tube dysfunction; status post bilateral ear surgery; obstructive sleep apnea; uretolisthiasis accompanied with acute renal colic; enuresis; and obesity" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") "for medium work . . . that requires no more than simple unskilled (i.e., routine and repetitive) work tasks and only minimal reading" (Tr. 16). Citing the VE's testimony, the ALJ concluded that Plaintiff could perform his past relevant work as a bagger, machine operator, and driver (Tr. 23).

The ALJ discounted Plaintiff's testimony of disabling physical and psychological limitation, noting that he was able to engage in a wide variety of pastimes, care for his children, and cook (Tr. 22). The ALJ found that Plaintiff's daily activities also undermined his testimony that the medication side effects of drowsiness precluded all work (Tr. 22). The ALJ also found that the treating records did not support Plaintiff's testimony of limitations in walking, standing, and overhead reaching (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Credibility Determination

Plaintiff takes issue with the administrative finding that his testimony was not fully credible. *Plaintiff's Brief,* 4-6. He faults the ALJ for underplaying the severity of symptoms as a result of kidney stones, asserting that the hospital records alone did not reflect the frequency of problems he experienced as a result of the condition. *Id.* at 5-6. He contends further that his testimony regarding daytime sleepiness, while rejected by the ALJ, is borne out by treating records showing a diagnosis of sleep apnea. *Id.* at 6.

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(citing *Walters v. Commissioner of Social Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, at 531. *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

The deference generally accorded an ALJ's credibility determination is appropriate here. Plaintiff faults the ALJ's finding that problems relating to kidney stones did not prevent full time-work, submitting that the finding that the condition was "temporary" (rather than continually problematic) reflects an erroneous reading of the record (Tr. 21). However, the medical evidence supports the finding that the condition, at most, created intermittent limitations. Plaintiff reported either kidney stones or pain in February, March, August, and December 2006; July, 2007; and May, 2009 (Tr. 227, 236, 267-268, 373, 456, 692). Even assuming that as in 2006, Plaintiff experienced symptomology four times over the course of one year, he cannot show that the condition occurred frequently enough to preclude full-time work. Moreover, Plaintiff's testimony that he had recently gone eight months without experiencing problems (Tr. 42-43) and had not hospitalized for kidney stones since 2007 undermines the argument that the condition created frequent problems (Tr. 44).

Further, the ALJ did not err in discounting Plaintiff's claims of daytime sleepiness. When asked directly whether sleep apnea caused drowsiness, Plaintiff did not allege daytime sleepiness as a result of sleep apnea but instead, that antidepressant medications made him drowsy (Tr. 51, 57-58). He alleged that he coped with the side effects by getting up, taking his medication, and falling back to sleep until the drowsiness subsided (Tr. 51, 58). The ALJ reasonably determined that the testimony of medication side effects was contradicted by treating notes stating that Plaintiff did not experience side effects from either Topamax or Cymbalta (Tr. 20). The ALJ noted that even if allegations of poor sleep hygiene could be attributed to sleep apnea, Plaintiff's ability to drive, care for his children, cook, and play

chess undermined the claim that he needed to nap during the day (Tr. 22). Because the credibility determination was well supported and explained, remand on this basis is not warranted.

### B. The Treating Physician Analysis

Plaintiff also argues that the ALJ erred in rejecting Dr. Kahn's disability opinions and also by failing to provide "good reasons" for the discounting the psychiatrist's findings. *Plaintiff's Brief,* 6-8. Plaintiff also contends that the ALJ's finding of a reduction in psychological symptoms reflects an erroneous reading of Dr. Kahn's treating records. *Id.*

"[I]f the opinion of the claimant's treating physician is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record,' it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2). In explaining reasons for rejecting the treating physician's opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

The ALJ's analysis of Dr. Kahn's opinion does not provide grounds for remand. The

ALJ cited Dr. Kahn's records at length, noting the duration, nature, and extent of the treating relationship as well as the reasons the opinion was rejected (Tr. 17, 20, 22-23). The ALJ noted that the "disability" statements stood at odds with Dr. Kahn's own treating notes suggesting that Plaintiff's symptomology was mild (Tr. 23). Notably, Dr. Kahn's February, July, and October, 2009 treating notes state that Plaintiff was cooperative, fully oriented, and "pleasant" (Tr. 547, 548-549, 551). Plaintiff also seems to argue that in determining that his condition was improving, the ALJ confused the opinion of a non-treating physician with Dr. Khan's conclusions. However, the ALJ did not find that Dr. Khan *stated* that Plaintiff was becoming better, but instead, noted that Dr. Khan's clinical observations supported the conclusion that Plaintiff's condition was improving with treatment (Tr. 20, 23).

As discussed above, the ALJ also noted that Plaintiff's daily activities, including caring for his children, shopping, and driving, stood at odds with the opinion that he was psychologically incapable of performing any work (Tr. 22). Consultive examination notes indicate that Plaintiff exhibited unremarkable behavior and was assigned a GAF of "65-70" indicating mild symptomology (Tr. 506-508). Plaintiff's acknowledgment that he was able to interact successfully with adult relatives living in the same household also also undermines his claim that his social limitations prevented him from working (Tr. 506).

To be sure, the record shows that Plaintiff experienced some level of psychological and physical limitations as a result of psychological issues, obesity, and a kidney problem. I caution that the recommendation to uphold the administrative opinion should not be read to trivialize his conditions or personal problems. However, because the ALJ's determination

-15-

was well within the "zone of choice" accorded the administrative fact-finder and did not contain procedural error, it should remain undisturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.

                                  s/ R. Steven Whalen
                                  R. STEVEN WHALEN
                                  UNITED STATES MAGISTRATE JUDGE

Date: July 11, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 11, 2012.

                                  s/Johnetta M. Curry-Williams
                                  Case Manager